**Robert L. LOCKHART, Plaintiff,**

v.

**CEDAR RAPIDS COMMUNITY SCHOOL DISTRICT, Defendant.**

**No. C 96–301–MWB.**

United States District Court, N.D. Iowa, Cedar Rapids Division.

April 25, 1997.

Matthew Glasson, Glasson Grove, Sole & McManus, Cedar Rapids, for Plaintiff.

Terry L. Abernathy, Matthew G. Novak, Pickens, Barnes & Abernathy, Cedar Rapids, for Defendant.

## TABLE OF CONTENTS

I. INTRODUCTION AND PROCEDURAL BACKGROUND ....................808

II. LACK OF JURISDICTION ...........................................809

    A. The Complaint Or The Amended Complaint?...............................810
    B. Rule 12(b)(1) Challenges To Jurisdiction..................................810
    C. Existence Of A Federal Question .......................................812

III. FAILURE TO STATE A CLAIM .........................................812
    A. Conversion Of A Rule 12(b)(6) Motion....................................812
    B. Standards For Summary Judgment .......................................813
    C. Factual Background ...................................................815
        1. Undisputed Facts...............................................815
        2. Disputed Facts .................................................815

D. Lockhart's Equal Protection Claim ......................................816
E. Remaining Claims ..................................................817
    1. Lockhart's employment status ......................................817
        a. The due process claim ......................................818
        b. Wrongful discharge under Iowa Code § 20.7(3) .....................819
        c. Wrongful discharge in violation of public policy......................819
    2. The employment status of Iowa public employees .......................819
        a. The presumption of "at-will" employment ..........................819
        b. Iowa Code § 20.7(3) ........................................821
    3. Does Iowa Code § 20.7(3) negate the presumption of at-will employ-
        ment? ......................................................821
        a. Section 20.7(3) negates the presumption...........................821
        b. Section 20.7(3) retains the presumption ...........................823
        c. Statutory interpretation.......................................824
        d. A plausible interpretation ....................................825
F. Certification Of The Question To The Iowa Supreme Court ..................826
    1. Authorization for certification ....................................826
    2. Certification analysis ..........................................827

IV. CONCLUSION ...................................................828

---

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION TO DISMISS

BENNETT, District Judge.

In what at first appears to be a garden-variety case of a former public employee who alleges he was discharged in violation of federal and state law, there is an important and far-reaching question of Iowa law that, surprisingly, is one of first impression: Did the Iowa legislature, by enacting a provision of the Iowa Public Employment Relations Act that authorizes public employers to "[s]uspend or discharge public employees for proper cause," Iowa Code § 20.7(3), intend to abrogate the common-law presumption that public employees are employed "at will"? The former public employee has asserted a federal claim, pursuant to 42 U.S.C. § 1983, for unconstitutional deprivation of a property interest in his job purportedly created by Iowa Code § 20.7(3), as well as state-law claims of wrongful discharge in violation of Iowa Code § 20.7(3) and wrongful discharge in violation of the public policy articulated in Iowa Code § 20.7(3). Consequently, interpretation of § 20.7(3) figures significantly in each of the plaintiff's claims. The employer has moved to dismiss the complaint before filing its answer, asserting both a lack of "federal question" jurisdiction, pursuant to *Fed.R.Civ.P.* 12(b)(1), and failure to state a claim upon which relief can be granted, pursuant to *Fed.R.Civ.P.* 12(b)(6). Thus, before reaching the question of the import of Iowa Code § 20.7(3), the court must first determine whether the plaintiff employee's amendment of his complaint cured pleading defects in his federal claim identified by the defendant. Nonetheless, the bulk of this opinion is devoted to the question of the proper interpretation of § 20.7(3) and the further matter of whether that important question should properly be certified to the Iowa Supreme Court.

### I. INTRODUCTION AND PROCEDURAL BACKGROUND

Plaintiff Robert L. Lockhart was an employee of defendant Cedar Rapids Community School District. He was discharged from the School District on June 21, 1996. On September 19, 1996, Lockhart filed this complaint against the School District, in which he asserted three claims under federal and state law. In count one, Lockhart asserts that his discharge deprived him of property rights for which he is entitled to relief pursuant to 42 U.S.C. § 1983. In count two, he alleges a wrongful discharge in violation of Iowa Code § 20.7(3). In count three, he alleges a wrongful discharge in violation of a well-defined public policy of the State of Iowa, which he contends is articulated in § 20.7(3).

The School District filed a motion to dismiss on October 17, 1996 with a request for oral argument. The School District contends

that Lockhart has failed to plead a claim within the jurisdiction of the court, because count one fails to allege any constitutional violation for which relief could be granted under § 1983. Without proper allegation of a § 1983 claim, the School District maintains that federal jurisdiction does not exist in this case. Next, the School District has moved to dismiss all three counts for failure to state a claim upon which relief can be granted. In support of this portion of its motion, the School District submitted matters outside of the pleadings which the School District contends establish that no genuine issue of material fact exists and Lockhart's claims are inadequate as a matter of fact and law. The School Board briefed its motion and has submitted a statement of undisputed facts including six exhibits. Thus, the School District clearly contemplated disposition of this part of its motion pursuant to the terms, not of *Fed.R.Civ.P.* 12(b)(6), but of *Fed.R.Civ.P.* 56.

On October 30, 1996, Lockhart filed a memorandum in resistance to the School District's motion as well as an affidavit in support of his resistance. Thus, Lockhart also anticipated that the court would consider matters outside of the pleadings in resolving the School District's motion to dismiss. Lockhart asserts that jurisdiction is proper, because he has asserted a constitutional violation and therefore has raised a federal question in count one of his complaint. Lockhart disputes the facts as presented by the School District and maintains that the discharge was unlawful.

Simultaneously with his resistance to the School District's motion to dismiss, Lockhart filed an amended complaint. The amended complaint varies from the original complaint with respect to count one. Although that count still alleges that Lockhart's discharge constituted a deprivation of a property interest by the School District acting under the color of state law, it now adds that the discharge "was in violation of the due process and equal protection clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States of America." Lockhart concludes the amended version of count one

by asserting jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

The School District filed a reply brief on November 4, 1996, which supplements its argument that the discharge was proper under both the federal Constitution and state law. On February 10, 1997, Lockhart filed a supplemental resistance to the School District's motion. In his supplemental resistance, Lockhart specifically enumerates which paragraphs of the School District's statement of undisputed facts he denies and also adds an additional affidavit.

On January 22, 1997, this court entered an order informing the parties that the School District's motion to dismiss would be construed as one for summary judgment and disposed of as provided for in *Fed.R.Civ.P.* 56, because the parties have submitted matters outside of the pleadings for consideration by the court in resolving the motion. The court heard oral arguments on the matter on March 11, 1997. At the oral arguments, the court requested further briefing on two issues: (1) whether Iowa Code § 20.7(3) negates the presumption of at-will employment; and (2) whether a post-deprivation hearing was required in this case to satisfy due process requirements. The parties submitted the requested briefs on March 21, 1997.

The court will consider first the School District's facial challenge to jurisdiction over the complaint and the question of whether Lockhart's amended complaint cures the jurisdictional defect. The court will then turn to the portion of the motion to dismiss that has been converted into a motion for summary judgment, the portion asserting failure to state a claim upon which relief can be granted.

## II. LACK OF JURISDICTION

The School District has asserted that Lockhart has failed to plead a claim upon which federal jurisdiction can be based. In response, Lockhart maintains that a federal question was alleged in count one of his original complaint. However, he contends further that his amended complaint remedies the alleged defect. Thus, the court must decide not only whether Lockhart has pre-

sented a federal question upon which jurisdiction of this court can be based, but upon which version of the complaint that inquiry should be based.

### A. The Complaint Or The Amended Complaint?

■ Whether the court can consider the amended complaint as curing pleading defects concerning jurisdiction depends upon whether the amended complaint may properly be received at all. Rule 15 of the Federal Rules of Civil Procedure states the pertinent provisions regarding the amendment of a pleading. Rule 15(a) states, in part, that a "party may amend the party's pleading as a matter of course at any time before a responsive pleading is served." The School District has not filed its answer. Instead, it has asserted lack of jurisdiction, pursuant to *Fed. R.Civ.P.* 12(b)(1), and failure to state a claim upon which relief can be granted, pursuant to *Fed.R.Civ.P.* 12(b)(6), in a pre-answer motion. A motion to dismiss pursuant to *Fed. R.Civ.P.* 12(b)(1) or 12(b)(6) is not a responsive pleading within the meaning of Rule 15. *Allwaste, Inc. v. Hecht,* 65 F.3d 1523, 1530 (9th Cir.1995); *McCrary v. Poythress,* 638 F.2d 1308, 1314 (5th Cir.), *cert. denied,* 454 U.S. 865, 102 S.Ct. 325, 70 L.Ed.2d 165 (1981); *McDonald v. Hall,* 579 F.2d 120 (1st Cir.1978). Accordingly, the School District has yet to file a responsive pleading to the original complaint. Lockhart is therefore permitted to file an amended complaint without leave of court pursuant to Rule 15(a).

Count I of the original complaint asserted that Lockhart's discharge deprived him of a property interest in his continuing employment with the School District; that the discharge by the School District was under the color of state law; and that jurisdiction was available under § 1983. The amended complaint repeats these assertions and includes the statement that the "discharge of Plaintiff by Defendant was in violation of the due process and equal protection clauses of the 5th and 14th Amendments to the Constitution of the United States of America."

■ Rule 15(c) provides as follows: "An amendment of a pleading relates back to the date of the original pleading when ... (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." The amended count offered here involves the same conduct, transaction, or occurrence as set forth in the original count in the original complaint within the meaning of Rule 15(c)(2). Accordingly, the amended complaint relates back to filing of the original one. *See Alpern v. Utilicorp United, Inc.,* 84 F.3d 1525, 1543 (8th Cir.1996) (citing *Fed. R.Civ.P.* 15(c)(2)). Because the amended complaint replaces the original, the court will address the remaining issues on the basis of the amended complaint.

### B. Rule 12(b)(1) Challenges To Jurisdiction

■ For the court to dismiss for lack of subject matter jurisdiction under *Fed. R.Civ.P.* 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments. *Titus v. Sullivan,* 4 F.3d 590, 593 (8th Cir.1993). The court in *Titus* distinguished between the two kinds of challenges:

> In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *Eaton v. Dorchester Dev., Inc.,* 692 F.2d 727, 731–32 (11th Cir. 1982). . . .
>
> If the [defendant] wants to make a *factual* attack on the jurisdictional allegations of the complaint, the court may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute. *Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1011 n. 4, 91 L.Ed. 1209 (1947) [footnote omitted]. The proper course is for the defendant to request an evidentiary hearing on the issue. *Osborn [v. United States],* 918 F.2d [724,] 730 (citing *Crawford v. United States,* 796 F.2d 924, 928 (7th Cir.1986)).

*Id.*

In *Osborn v. United States,* 918 F.2d 724 (8th Cir.1990), the Eighth Circuit Court of

Appeals presented its most exhaustive discussion of the procedures and requirements for determination of a 12(b)(1) motion to dismiss.

The district court was correct in recognizing the critical differences between Rule 12(b)(1), which governs challenges to subject matter jurisdiction, and Rule 56, which governs summary judgment. Rule 12 requires that Rule 56 standards be applied to motions to dismiss for failure to state a claim under Rule 12(b)(6) when the court considers matters outside the pleadings. [Citations omitted.] Rule 12 does not prescribe, however, summary judgment treatment for challenges under 12(b)(1) to subject matter jurisdiction where a factual record is developed. Nonetheless, some courts have held that Rule 56 governs a 12(b)(1) motion when the court looks beyond the complaint. We agree, however, with the majority of circuits that have held to the contrary.... [Citations omitted.]

The reason for treating a 12(b)(1) motion differently than a 12(b)(6) motion, which is governed by Rule 56 when matters outside the pleadings are considered, "is rooted in the unique nature of the jurisdictional question." *Williamson* [*v. Tucker*], 645 F.2d [404,] 413 [ (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981) ]. It is "elementary," the Fourth [sic] Circuit stated, that a district court has "broader power to decide its own right to hear the case than it has when the merits of the case are reached." *Id.* Jurisdictional issues, whether they involve questions of law or of fact, are for the court to decide. *Id.* Moreover, because jurisdiction is a threshold question, judicial economy demands that the issue be decided at the outset rather than deferring it until trial, as would occur with denial of a summary judgment motion.

*Osborn*, 918 F.2d at 729.

The court in *Osborn* found the distinction between facial and factual attacks on the complaint under 12(b)(1) to be critical. *Id.* (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.), *cert. denied*, 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980), and *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977)). The court stated that

[i]n the first instance, the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6). The general rule is that a complaint should not be dismissed " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards.

*Id.* at 729 n. 6 (citations omitted).[1] A factual challenge to jurisdiction under 12(b)(1) is unique:

[H]ere the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56. Because at issue in a factual motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*Id.* at 730 (quoting *Mortensen*, 549 F.2d at 891). The *Osborn* court stated that the proper course is for the defendant to request an evidentiary hearing on the issue, and, since no statute or rule prescribes the format of

---

1. The standards for dismissal under Rule 12(b)(6) were recently restated in *Carney v. Houston*, 33 F.3d 893, 894 (8th Cir.1994):

We must construe the allegations in the complaint in the light most favorable to [plaintiff], see [*Concerned Citizens of Neb. v. United States Nuclear Reg. Comm'n*, 970 F.2d 421, 425 (8th

Cir.1992) ], and should not approve dismissal of his complaint for failure to state a claim unless "it appears beyond doubt that [he] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

such a hearing, " 'any rational mode of inquiry will do.' " *Id.* (quoting *Crawford,* 796 F.2d at 929).

> Once the evidence is submitted, the district court must decide the jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue. [*Crawford,* 796 F.2d at 929.] The only exception is in instances when the jurisdictional issue is "so bound up with the merits that a full trial on the merits may be necessary to resolve the issue." *Id.*

*Id.*

Although the district court has the authority to consider matters outside the pleadings on a motion challenging subject matter jurisdiction under *Fed.R.Civ.P.* 12(b)(1), *Drevlow v. Lutheran Church, Mo. Synod,* 991 F.2d 468, 470 (8th Cir.1993), and the parties here have submitted matters outside of the pleadings, the court finds that the School District's challenge to subject matter jurisdiction is precisely that Lockhart failed to allege an element necessary for subject matter jurisdiction, *i.e.,* a facial challenge to jurisdiction. *Titus,* 4 F.3d at 593. Therefore, in resolving this portion of the School District's motion to dismiss, the court will restrict itself to the face of the pleadings, and afford the non-moving party, Lockhart, the same protections he would receive defending against a motion brought under Rule 12(b)(6). *Osborn,* 918 F.2d at 729 n. 6.

### C. Existence Of A Federal Question

■ Federal Rule of Civil Procedure 8(a)(1) requires a pleading to contain "a short and plain statement of the grounds upon which the court's jurisdiction depends...." As the parties are not of diverse citizenship, the court's jurisdiction in this case depends upon a short and plain assertion by Lockhart of a federal question. Federal question jurisdiction of the district courts is established by 28 U.S.C. § 1331, which states, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

In its motion, the School District asserts that the original complaint merely cited 42

U.S.C. § 1983 without stating an essential element for such a claim. Specifically, the School District contends that Lockhart failed to allege in the original complaint any violation of the Constitution. Without alleging all of the elements of a § 1983 claim, the only purported federal claim asserted, the School District contends that Lockhart failed to state a federal question under 28 U.S.C. § 1331 upon which jurisdiction of this court could be based.

Whatever the defects of the original complaint, however, the court has concluded that the jurisdictional challenge must be determined on the face of the amended complaint. The amended complaint expressly alleges a violation of specific constitutional rights. Lockhart now asserts that he has been deprived of due process and equal protection in violation of the Fifth and Fourteenth Amendments to the Constitution. Consequently, a remedy for violation of those rights is available pursuant to 42 U.S.C. § 1983. The court therefore concludes that a federal question has been alleged and that jurisdiction exists under § 1331. Accordingly, that portion of the School District's motion to dismiss that is premised upon a lack of jurisdiction, pursuant to *Fed.R.Civ.P.* 12(b)(1), will be denied.

### III. FAILURE TO STATE A CLAIM

### A. Conversion Of A Rule 12(b)(6) Motion

■ The School District argues in the alternative that Lockhart's complaint should be dismissed for failure to state a claim. The School District asserts that Lockhart's claims lack "any arguable basis in fact or law." Although its motion is titled a Rule 12(b)(6) motion, the School District has included numerous facts outside the pleadings. Accordingly, this court has entered an order, filed January 22, 1997, informing the parties that the motion would be treated as one for summary judgment and disposed of as provided in Federal Rule of Civil Procedure 56.

A motion to dismiss may be made, *inter alia,* for "failure to state a claim upon which relief can be granted." *Fed.R.Civ.P.* 12(b)(6). Ordinarily, a motion to dismiss pursuant to *Fed.R.Civ.P.* 12(b)(6) requires

the court to review only the pleadings to determine whether the pleadings state a claim upon which relief can be granted. *Fed. R.Civ.P.* 12(b).[2] However, where on a Rule 12(b)(6) motion to dismiss "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." *Fed.R.Civ.P.* 12(b)(6). Even where matters outside of the pleadings are presented to the court, however, a motion to dismiss is not converted into a motion for summary judgment "where the district court's order makes clear that the judge ruled only on the motion to dismiss." *Skyberg v. United Food and Commercial Workers Int'l Union, AFL–CIO,* 5 F.3d 297, 302 n. 2 (8th Cir.1993). Where the district court has made the posture of its disposition clear, the appellate court will "treat the case as being in that posture." *Id.*

In this case, both parties submitted materials outside of the pleadings that they anticipated would be considered by the court in resolving the School District's motion. Furthermore, the court has "given reasonable opportunity to present all material made pertinent to such a motion by Rule 56" after notifying the parties that the motion pursuant to *Fed.R.Civ.P.* 12(b)(6) would be treated as a motion for summary judgment. *Fed.*

*R.Civ.P.* 12(b). Consequently, the court will dispose of this part of the School District's motion pursuant to the standards stated in *Fed.R.Civ.P.* 56.

## B. Standards For Summary Judgment

The Eighth Circuit Court of Appeals recognizes "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions,* 900 F.2d 1234, 1238 (8th Cir.1990). On the other hand, the Federal Rules of Civil Procedure have authorized for nearly 60 years "motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Thus, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Wabun–Inini,* 900 F.2d at 1238 (quoting *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2554–55); *Hartnagel v. Norman,* 953 F.2d 394, 396 (8th Cir.1992).

The standard for granting summary judgment is well established. Rule 56 of the

---

**2.** Motions to dismiss for failure to state a claim "can serve a useful purpose in disposing of legal issues with the minimum of time and expense to the interested parties." *Hiland Dairy, Inc. v. Kroger Co.,* 402 F.2d 968, 973 (8th Cir.1968), *cert. denied,* 395 U.S. 961, 89 S.Ct. 2096, 23 L.Ed.2d 748 (1969). The issue is not whether a plaintiff will ultimately prevail, but rather whether the plaintiff is entitled to offer evidence in support of the plaintiffs claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *United States v. Aceto Agric. Chem. Corp.,* 872 F.2d 1373, 1376 (8th Cir.1989).

In considering a motion to dismiss under Rule 12(b)(6), the court must assume that all facts alleged in the plaintiff's complaint are true, and must liberally construe those allegations. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The court is mindful that in treating the factual allegations of a complaint as true pursuant to Rule 12(b)(6), the court "do[es] not, however, blindly accept the legal conclusions drawn by the pleader from the facts." *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990) (citing *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th

Cir.1987), and 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1357, at 595–97 (1969)); *see also LRL Properties v. Portage Metro Hous. Auth.,* 55 F.3d 1097, 1103 (6th Cir.1995) (the court "need not accept as true legal conclusions or unwarranted factual inferences," quoting *Morgan,* 829 F.2d at 12). Conclusory allegations need not and will not be taken as true; rather, the court will consider whether the *facts* alleged in the complaint, accepted as true, are sufficient to state a claim upon which relief can be granted. *Westcott,* 901 F.2d at 1488.

"A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 102. The Rule does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations. *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 1832–33, 104 L.Ed.2d 338 (1989). Thus, it is only in the "unusual case" where the complaint on its face reveals some insuperable bar to relief that a dismissal under Rule 12(b)(6) is warranted. *Fusco v. Xerox Corp.,* 676 F.2d 332, 334 (8th Cir.1982).

Federal Rules of Civil Procedure states in pertinent part:

Rule 56.   Summary Judgment

(b) For Defending Party.   A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon. . . .   *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

*Fed.R.Civ.P.* 56(a)-(c) (emphasis added); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Reliance Ins. Co. v. Shenandoah S., Inc.,* 81 F.3d 789, 791 (8th Cir.1996); *Beyerbach v. Sears,* 49 F.3d 1324, 1325 (8th Cir.1995); *Munz v. Michael,* 28 F.3d 795, 798 (8th Cir.1994); *Roth v. U.S.S. Great Lakes Fleet, Inc.,* 25 F.3d 707, 708 (8th Cir.1994); *Cole v. Bone,* 993 F.2d 1328, 1331 (8th Cir. 1993); *Woodsmith Publ'g Co. v. Meredith Corp.,* 904 F.2d 1244, 1247 (8th Cir.1990); *Wabun–Inini,* 900 F.2d at 1238 (citing *Fed. R.Civ.P.* 56(c)).[3]   A court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party, here Lockhart, and give Lockhart the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Quick v. Donaldson Co.,* 90 F.3d 1372, 1377 (8th Cir.1996); *Rifkin v. McDonnell Douglas Corp.,* 78 F.3d 1277, 1280 (8th Cir.1996); *Marts v. Xerox, Inc.,* 77 F.3d 1109, 1112 (8th Cir.1996); *Munz,* 28 F.3d at 796; *Allison v. Flexway*

*Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir.1994); *Johnson v. Group Health Plan, Inc.,* 994 F.2d 543, 545 (8th Cir.1993); *Burk v. Beene,* 948 F.2d 489, 492 (8th Cir.1991); *Coday v. City of Springfield,* 939 F.2d 666, 667 (8th Cir.1991), *cert. denied,* 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 416 (1992).

Procedurally, the moving party, here the School District, bears "the initial responsibility of informing the district court of the basis for their motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53); *see also Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir.1993).   The School District is not required by Rule 56 to support its motion with affidavits or other similar materials negating the opponent's claim.   *Id.*

"When a moving party has carried its burden under *Rule* 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356.   Lockhart is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P.* 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach,* 49 F.3d at 1325.   Although "direct proof is not required to create a jury question, . . . to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler,* 762 F.2d 621, 625 (8th Cir. 1985) (quoting *Impro Prods., Inc. v. Herrick,* 715 F.2d 1267, 1272 (8th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)), *cert. denied sub nom. Metge v. Bankers Trust Co.,* 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986).   The

**3.**   An issue of material fact is genuine if it has a real basis in the record. *Hartnagel,* 953 F.2d at 394 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)).   "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Beyerbach,* 49 F.3d at 1326; *Hartnagel,* 953 F.2d at 394.

necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Allison,* 28 F.3d at 66.

In *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11, *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53, and *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56, the Supreme Court established that a summary judgment motion should be interpreted by the trial court to accomplish its purpose of disposing of factually unsupported claims, and the trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Quick,* 90 F.3d at 1376–77; *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). The trial court, therefore, must "assess the adequacy of the nonmovants' response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel,* 953 F.2d at 396 (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). If Lockhart fails to make a sufficient showing of an essential element of a claim with respect to which he has the burden of proof, then the School District is "entitled to judgment as a matter of law." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552; *Woodsmith,* 904 F.2d at 1247. However, if the court can conclude that a reasonable trier of fact could return a verdict for the nonmovant, then summary judgment should not be granted. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Burk,* 948 F.2d at 492; *Woodsmith,* 904 F.2d at 1247. With these standards in mind, the court turns to consideration of the defendant's motion to dismiss for failure to state a claim, as converted by the court into a motion for summary judgment with the submission by the parties of matters outside of the pleadings and upon proper notice. Consideration of this part of the School District's motion begins with a statement of the undisputed and disputed facts that form the factual backdrop to the present litigation.

### C. *Factual Background*

#### 1. *Undisputed Facts*

The undisputed facts presented by the parties and the record are limited. Lockhart is a white male who was employed by the School District in various custodial positions from 1980 to June 21, 1996. His most recent position was as an engineer at Washington High School. On May 20, 1996, an incident occurred during which Lockhart lost his temper and raised his voice at Ms. Leslie Nelson, the women's tennis coach at Washington High School. Following the incident on May 20, 1996, Lockhart left work for the day and was later involved in an automobile accident.

On May 30, 1996, Lockhart attended a meeting of School District officials at which the incident was discussed. The record indicates that it is undisputed that on at least one previous occasion, a principal had suggested Lockhart should be more polite. Lockhart admitted at the meeting on May 30, 1996, that he had lost his temper in the incident with Ms. Nelson and he apologized for his behavior. At that meeting, Lockhart was informed that he was being suspended with pay and was asked to avoid contact with the school until further notice.

At a subsequent meeting with School District officials on June 7, 1996, Lockhart was informed orally that he would be discharged. Lockhart was also given a fourteen-day written notice stating that his discharge would be effective June 21, 1996. Lockhart's union representative was also present at the meeting on June 7, 1996.

#### 2. *Disputed Facts*

The remaining facts are all in dispute. The School District has filed with its motion statements and affidavits that detail the incident on May 20, 1996, with the tennis coach, as well as many other similar incidents. These incidents all are described as including volatile, belligerent, and threatening verbal and physical behavior. The School District submits evidence that Lockhart had been warned previously by Dr. Julia Campbell, the Executive Director of Human Resources for the School District, and by Dr. Greg Reed, Principal of Kennedy High School. The

School District states that at the meeting on May 30, 1996, Lockhart was told that School District officials would be considering the nature of the discipline to be invoked during his paid suspension. The School District asserts that a plain-clothes police officer was present at the June 7, 1996, meeting, because of the School District's concerns about Lockhart's potential for violence when he was informed of his termination. The School District further contends that Lockhart was dangerous and that numerous people were afraid of him and his temper.

Lockhart disputes these factual assertions. He states in his affidavit that he is not dangerous, has never harmed anyone, and has never threatened anyone with harm. He asserts that he was never told that people were afraid of him. He indicates that he never received any written warnings and that his personnel file has no record of any previous warnings during his employment with the School District. He also contends that he was not told that further discipline was being considered during his suspension. Instead, he maintains that Dr. Campbell told him at the May 30, 1996, meeting not to worry about his suspension, because she would "think of something." Lockhart was unaware of the presence of a plain-clothes police officer at the June 7, 1996, meeting.

Additionally, the affidavit of Lockhart's union bargaining agent, Michael Mehaffey, and Lockhart's own affidavit maintain that the discipline meted out to Lockhart was excessive and that other similarly situated employees have shouted and lost their tempers without being discharged as a result. Finally, Lockhart asserts that he was qualified to perform his job.

With this factual background in mind, the court will consider whether each of Lockhart's claims is appropriate for summary disposition. The court's analysis begins with Lockhart's equal protection claim.

### D. Lockhart's Equal Protection Claim

■ A component of Lockhart's constitutional claim in count one of the amended complaint is the assertion that he was denied equal protection under the law. Title 42 U.S.C. § 1983 provides for vindication of the right to equal protection under the Fourteenth Amendment. *Ricketts v. City of Columbia, Mo.,* 36 F.3d 775, 779 (8th Cir.1994), cert. denied, —— U.S. ——, 115 S.Ct. 1838, 131 L.Ed.2d 757 (1995). "The Equal Protection Clause of the Fourteenth Amendment commands that no state shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially the direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) (citing *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394–95, 72 L.Ed.2d 786 (1982)).

■ The court must determine, first, whether a suspect classification or fundamental right is involved. "The equal protection clause does not only protect 'fundamental rights' and does not only protect against 'suspect classifications' such as race." *Batra v. Board of Regents,* 79 F.3d 717, 721 (8th Cir.1996). "It also protects citizens from arbitrary or irrational state action." *Id.* Nonetheless, when the classification is suspect or *does* involve fundamental rights, it will be upheld only if it is shown that the state action is necessary to serve a compelling state interest. *Kramer v. Union Free Sch. Dist.,* 395 U.S. 621, 626–27, 89 S.Ct. 1886, 1889–90, 23 L.Ed.2d 583 (1969). However, absent a classification that burdens a suspect group or a fundamental interest, the "highly deferential 'rational basis' standard" is applied. *Batra,* 79 F.3d at 721. Under a rational basis analysis, " 'courts are quite reluctant to overturn governmental action on the ground it denies equal protection of the laws.' " *Gregory v. Ashcroft,* 501 U.S. 452, 471, 111 S.Ct. 2395, 2406, 115 L.Ed.2d 410 (1991) (quoting *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 942–43, 59 L.Ed.2d 171 (1979)).

The Court of Appeals for the Eighth Circuit recently dealt with an analogous issue in *Batra. Batra,* 79 F.3d at 721–22. In that case, non-tenured teachers for a university's College of Engineering were not given a document entitled "Criteria for Promotion and Tenure." *Id.* at 721. The document was required to be disseminated by the relevant

by-laws and had been disseminated to non-tenured teachers for the other colleges within the university. *Id.* The non-tenured teachers in the College of Engineering based their equal protection claim on this alleged "withholding" of information vital to obtaining tenure. *Id.*

The Eighth Circuit Court of Appeals rejected the teacher's claim. The court noted that "[i]f that type of 'withholding,' without more, were enough to trigger a 'rational basis' analysis of why the information was withheld, virtually every negligent governmental action could be converted into an equal protection violation." *Id.* "Thus, courts have consistently required equal protection plaintiffs to allege and prove something more than different treatment by governmental officials." *Id.* The court explained:

As the Supreme Court said in *Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944):

The unlawful administration by state officers of a state statute fair on its face resulting in the unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination.

*Snowden* confirms that *the something more required of the plaintiff in this kind of equal protection case is the presence of an unlawful intent to discriminate against the plaintiff or an invalid reason.* Plaintiff need not prove that another fundamental right was trampled—the right to equal protection of the laws is itself fundamental. Nor need plaintiff prove that he or she was victimized by a "suspect classification" such as race. *But the discrimination must be intentional,* and the government's motive must fail to comport with the requirements of equal protection. *See Dickens v. [State of Mo. by] Ashcroft,* 887 F.2d 895 (8th Cir.1989) (per curiam).

*Batra,* 79 F.3d at 721 (emphasis added). Absent allegation of a fundamental right infringed or a suspect classification, "the key requirement is that plaintiff allege and prove unlawful, purposeful discrimination." *Id.* at 722. In *Batra,* the court found that the plaintiffs did not include this key requirement. *Id.* Whereas the plaintiffs may have been "victims of random government incompetence," the Court of Appeals for the Eighth Circuit found that their equal protection claim was properly dismissed. *Id.*

In this case, Lockhart does not allege any suspect classification, based on his race, for example, nor infringement of any fundamental right. "The right to public employment is not a fundamental right." *Bennett v. City of Redfield,* 446 N.W.2d 467, 473 (Iowa 1989) (citing *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976)). Nor does Lockhart challenge any legislative action or contend that Iowa Code § 20.7(3) itself is not even-handed. Instead, Lockhart maintains that other similarly situated custodial personnel have behaved and "shouted" as he did, but were not discharged as he was. It is upon this assertion that he bases his equal protection claim. Consequently, it is only "arbitrary or irrational state action" of which he complains, and the proper standard of scrutiny is thus "rational basis." *Batra,* 79 F.3d at 721.

Furthermore, Lockhart fails to allege the presence of an unlawful intent to discriminate against him for an invalid reason. *See id.* Absent proving more than different treatment, he fails to allege an equal protection claim. As the Eighth Circuit Court of Appeals noted in *Batra,* if just different treatment were enough, every dismissal of a governmental employee could be converted into an equal protection claim. *Id.* Consequently, this court will grant the School District's motion to dismiss as to Lockhart's equal protection claim, on the grounds that, as pleaded, it fails to state a claim upon which relief can be granted and Lockhart has failed to generate any genuine issue of material fact that the School District acted with the requisite discriminatory intent.

### E. Remaining Claims

#### 1. Lockhart's employment status

Lockhart's remaining claims assert a due process violation in count one, wrongful discharge in violation of Iowa Code § 20.7(3) in

count two, and wrongful discharge in violation of public policy, as public policy is articulated in § 20.7(3), in count three. These three remaining claims share the common preliminary issue of Lockhart's employment status under Iowa law during his employment with the School District. Therefore, to determine the proper resolution of the School District's motion to dismiss these claims, the court must first examine the impact of § 20.7(3) upon each of these claims.

### a. The due process claim

As to Lockhart's due process claim, the question is whether some provision of Iowa law creates the necessary property interest in Lockhart's employment to sustain his due process claim for deprivation of his employment. This is so, because the United States Supreme Court has held that the Fourteenth Amendment's due process guarantee applies only to public employees who have a "property interest" in the terms or conditions of their employment. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). "A person must have a legitimate claim of entitlement to his or her employment to have a property interest in it." *Winegar v. Des Moines Indep. Community Sch. Dist.*, 20 F.3d 895, 899 (8th Cir.), *cert. denied*, 513 U.S. 964, 115 S.Ct. 426, 130 L.Ed.2d 340 (1994) (citing *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709). "Typically, this interest arises from contractual or statutory limitations on the employer's ability to terminate an employee." *Id.* (citing *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976)). When such a property interest exists, the employee is entitled to a hearing or some related form of due process before being deprived of the interest. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985).

The United States Supreme Court has held that when a federal "employee could only be discharged for cause, he had a property interest which was entitled to constitutional protection." *Bishop v. Wood*, 426 U.S. at 346 n. 8, 96 S.Ct. at 2078 n. 8 (citing *Arnett v. Kennedy*, 416 U.S. 134, 151–52, 94 S.Ct. 1633, 1642–43, 40 L.Ed.2d 15 (1974)). The Eighth Circuit Court of Appeals has

likewise held that where an employee who could only be discharged for cause, the employee "had a property interest entitling him to procedural due process." *Kennedy v. Robb*, 547 F.2d 408, 413 (8th Cir.1976) (applying Missouri law); *accord Blankenbaker v. McCook Public Power Dist.*, 940 F.2d 384 (8th Cir.1991) (extrapolating from Nebraska law). The sufficiency of the claim of a property interest "must be decided by reference to state law." *Bishop*, 426 U.S. at 344, 96 S.Ct. at 2077. The state law Lockhart asserts creates the property interest in his case is Iowa Code § 20.7(3).

The Iowa Supreme Court's decision in *Bennett v. City of Redfield*, 446 N.W.2d 467 (Iowa 1989), provides an example of an analysis of whether state law creates an adequate property interest in employment to sustain a public employee's due process claim. In *Bennett*, a city employee relied upon Iowa Code Ch. 400 and Iowa Code § 372.15 as establishing his property interest in his employment. *Bennett*, 446 N.W.2d at 472. The Iowa Supreme Court concluded that Iowa Code Ch. 400, which requires that discharge of civil service employees must be "for cause" and provides a procedural mechanism to be followed in such cases, "creates a property interest in continued employment." *Id.* However, the court found that the statute did not apply to the employee asserting a due process claim in that case, because the statute expressly did not apply to cities of the size that employed the plaintiff. *Id.* at 473. Instead, the Iowa Supreme Court found that the provision of the Iowa Code applicable to the plaintiff, Iowa Code § 372.15, provided a notification procedure for discharge, but did not "require that removal be for cause." *Id.* (citing *Scott v. City of Waterloo*, 190 Iowa 467, 180 N.W. 156 (1920)). As an at-will employee, the court held the plaintiff "did not have a property interest in continued employment under state law." *Id.* (citing *McBride v. City of Sioux City*, 444 N.W.2d 85 (Iowa 1989)); *see also Sieg v. Civil Serv. Comm'n*, 342 N.W.2d 824, 829 (Iowa 1983) ("A police officer does not have a constitutional right to his employment").

Thus, the question in this case is whether Lockhart can cite some statute creating a

requirement that his removal be for cause, or whether Lockhart was instead an at-will employee at the time of his termination. *Bennett*, 446 N.W.2d at 473. Lockhart maintains that he was not an at-will employee, because Iowa code § 20.7(3) constitutes a statutory limitation on the School District's ability to discharge him. Section 20.7(3) provides that public employers may discharge employees "for proper cause." The School District contends that the employment relationship with Lockhart was at will, even under § 20.7(3), and that Lockhart consequently had no property interest in his employment. Therefore, the viability of Lockhart's due process claim depends upon the proper interpretation of § 20.7(3) and its impact on Lockhart's employment status.

The court finds that Iowa Code § 20.7(3) is of central significance to each of Lockhart's state-law claims as well, as is explained in the following subsections.

### b. Wrongful discharge under Iowa Code § 20.7(3)

Lockhart asserts in count two that his discharge from employment with the School District was wrongful, specifically because it violates the terms of Iowa Code § 20.7(3). He alleges that § 20.7(3) precludes the School District from discharging him unless "proper cause" exists to do so. He argues that inclusion in the statute of the words "for proper cause" limits the employer in the same manner as the more familiar phrases "for just cause" or "for cause" have been held to do. The School District disagrees with Lockhart's interpretation of § 20.7(3), arguing that Lockhart was employed at will and could be discharged at any time. In the alternative, the School District argues that, even if "proper cause" is required, such proper cause did exist in this case to justify Lockhart's discharge. Again, the court is faced with interpreting § 20.7(3) and determining its impact upon Lockhart's employment status before the viability of Lockhart's state-law wrongful discharge claim, based directly on a violation of Iowa Code § 20.7(3), can be resolved.

### c. Wrongful discharge in violation of public policy

Lockhart's second state-law claim, asserted in count three of his amended complaint, alleges wrongful discharge in violation of public policy. The difference between this claim and the claim asserted in count two of Lockhart's complaint is that, instead of asserting wrongful discharge based directly on a violation of Iowa Code § 20.7(3), Lockhart asserts that his discharge was in violation of the public policy expressed in Iowa Code § 20.7(3). The parties raise the same arguments as were raised with respect to count two. Therefore, once again, the interpretation of § 20.7(3) and its impact upon Lockhart's employment status are the preliminary steps in the resolution of this public policy claim.

### 2. The employment status of Iowa public employees

Having established that the interpretation of Iowa Code § 20.7(3) is central to resolution of the School District's motion to dismiss each of Lockhart's remaining claims, the court must next consider precisely what is the proper interpretation of that statute and, thus interpreted, what is its impact upon Lockhart's employment status. The interpretation and impact of Iowa Code § 20.7(3) upon the employment status of public employees such as Lockhart must be examined in the context of Iowa employment law.

### a. The presumption of "at-will" employment

In Iowa, employment relationships are presumed to be at will. *Anderson v. Douglas & Lomason Co.*, 540 N.W.2d 277, 281 (Iowa 1995). The "at-will" doctrine means that an employer may discharge an at-will employee "at any time, for any reason, or no reason at all" without consequence. *Huegerich v. IBP, Inc.*, 547 N.W.2d 216, 219 (Iowa 1996) (citing *Borschel v. City of Perry*, 512 N.W.2d 565, 566 (Iowa 1994); *Lara v. Thomas*, 512 N.W.2d 777, 781 (Iowa 1994); and *French v. Foods, Inc.*, 495 N.W.2d 768, 769 (Iowa 1993)); *accord Anderson*, 540 N.W.2d at 281 (citing *Hunter v. Bd. of Trustees*, 481 N.W.2d 510, 513 (Iowa 1992)).

■ Where there is a definite limitation upon the termination of employment in the employment contract or applicable statute or rule, the employment relationship is no longer at will. *Anderson*, 540 N.W.2d at 281. A typical example of such a limitation can be found in *Anderson*, where the court held the language in a contract stating that discharge will occur "only for cause or under certain conditions" would be enforceable and negated the presumption of at-will employment. *Id.* at 283 (citing *French*, 495 N.W.2d at 770; *Hunter*, 481 N.W.2d at 513; and *Fogel v. Trustees of Iowa College*, 446 N.W.2d 451, 455 (Iowa 1989)); *Cannon v. National By-Prods., Inc.*, 422 N.W.2d 638, 639 (Iowa 1988) ("just and sufficient cause" requirement was enforceable).

■ Similarly, the Iowa Supreme Court has recognized that when an employment contract specifies that employment shall continue to a definite time or until a definite day, "the employer may not discharge the employee prior to the stated time unless cause is shown based upon the employee's failure to perform in accordance with the contract for hire or there is some reason for discharge expressly provided in the contract." *Wolfe v. Graether*, 389 N.W.2d 643, 652 (Iowa 1986) (citing *Allen v. Highway Equip.*, 239 N.W.2d 135, 140 (Iowa 1976)). Employment contracts for "lifetime or permanent employment," however, will be construed to be "indefinite and terminable at will in the absence of some executed consideration in addition to the services to be rendered." *Id.* at 652 (citing *Allen*, 239 N.W.2d at 140; *Stauter v. Walnut Grove Prods.*, 188 N.W.2d 305, 311 (Iowa 1971); and *Lewis v. Minnesota Mut. Life Ins.*, 240 Iowa 1249, 37 N.W.2d 316, 324 (1949)). Where the employment is permanent and for additional consideration, an employee may still be discharged for cause. *Wolfe*, 389 N.W.2d at 657. Such "permanent employment" may be better construed as "employment that is terminable only for cause." *Hunter v. Board of Trustees*, 481 N.W.2d 510, 514 (Iowa 1992).

■ Absent such limitations, however, employment relationships are presumed to be at will under Iowa law. *Anderson*, 540 N.W.2d at 281. The Iowa Supreme Court has recognized "two narrow exceptions to this general rule: (1) where the discharge clearly violates a 'well-recognized and defined public policy of the state;' and (2) where a contract is created by an employer's handbook or policy manual" that contains language limiting the conditions under which an employer may discharge an employee. *Huegerich*, 547 N.W.2d at 220 (quoting *Borschel*, 512 N.W.2d at 566 (citations omitted)). Examples of public policy limitations to the discharge of an at-will employee include discharge of an employee in retaliation for the employee's refusal to violate a law in the course of employment, *Wilcox v. Hy-Vee Food Stores, Inc.*, 458 N.W.2d 870, 872 (Iowa. Ct.App.1990); discharge in retaliation for filing a partial unemployment claim, *Lara v. Thomas*, 512 N.W.2d 777, 780 (Iowa 1994); and discharge in retaliation for filing a workers' compensation claim, *Yockey v. State*, 540 N.W.2d 418 (Iowa 1995).

■ Just as in private employment situations, Iowa common law has been that "public employment [is] at will" absent some specific limitation on the termination of an employee. *Van Baale v. City of Des Moines*, 550 N.W.2d 153, 156 (Iowa 1996). The limitation may be found in a statute, ordinance, contract, or binding handbook. *Id.* Whereas limitations upon a private employment relationship are typically only found in a contract or handbook, the employment rights "of public employees are largely a creature of statute." *Lee v. Halford*, 540 N.W.2d 426, 429 (Iowa 1995) (citing *Hammer v. Branstad*, 463 N.W.2d 86, 91–92 (Iowa 1990)). The Iowa Code does contain provisions that have been found to negate the presumption of at-will public employment. *See, e.g., Winegar*, 20 F.3d at 899 (citing Iowa Code §§ 279.13–279.19, which establishes procedures for termination for teachers, as creating a continuing contract); *Van Baale*, 550 N.W.2d at 156 (Iowa Code Ch. 400 "creates a new right to continued employment [for civil service employees] (subject only to removal for cause) that did not exist at common law."); *Waterloo Educ. Assoc. v. Waterloo Community Sch. Dist.*, 372 N.W.2d 267 (Iowa 1985) (Iowa Code

§ 279.25(2) and § 279.27 provide for termination of teachers only for "just cause").

### b.   Iowa Code § 20.7(3)

In this case, Lockhart asserts that Iowa Code § 20.7(3) places a statutory limitation on the School Board's ability to terminate him, thus negating the presumption that his employment was at will.  The relevant portion of Iowa Code § 20.7 is as follows:

**20.7   Public employer rights**

Public employers shall have, in addition to all powers, duties, and rights established by constitutional provision, statute, ordinance, charter, or special act, the exclusive power, duty, and right to:

\*     \*     \*     \*     \*     \*

3.   Suspend or discharge public employees for proper cause.

Iowa Code § 20.7(3) (enacted in 1974 as part of the Iowa Public Employment Relations Act).  Lockhart contends that this statute specifically limits his discharge to discharge for "proper cause," which he likens to the more familiar terms "for just cause" or "for cause," which remove employment from the at-will category.  The School District does not dispute that § 20.7(3) is applicable to Lockhart, but does contend that Lockhart is nonetheless an at-will employee.

Quite surprisingly, no reported Iowa decision has directly addressed the issue of whether § 20.7(3) negates the presumption of at-will employment for the public employees and employers covered under this provision of the Iowa Public Employment Relations Act. The few cases that have specifically addressed § 20.7(3) deal with its interaction with other statutory provisions involving discharge of public teachers.  *See, e.g., Northeast Community Educ. Ass'n v. Northeast Community Sch. Dist.,* 402 N.W.2d 765, 770 (Iowa 1987) (holding that § 20.7(3) expressly grants school districts the power to suspend teachers for proper cause for disciplinary reasons provided an Iowa Code § 279.27 discharge proceeding has been initiated); *McFarland v. Board of Educ.,* 277 N.W.2d 901, 906 (Iowa 1979) (holding that § 20.7(3) was not inconsistent with the provision regarding the discharge

of a teacher employed by public schools, Iowa Code § 279.27); *and see Iowa City Community Sch. Dist. v. Iowa City Educ. Ass'n,* 343 N.W.2d 139, 147–48 (Iowa 1983) (*en banc*) (Reynoldson, C.J., dissenting) (although the majority found the question of a public employee was arbitrable, without considering Iowa Code § 20.7(3), the dissenting justices, including Reynoldson, Uhlenhopp, McGiverin, and Schultz, concluded that the "exclusive power" to suspend or discharge under § 20.7(3) could not be delegated to an arbitrator, although the collective bargaining agreement between the teachers and the district provided for arbitration).  This court must therefore look for implications from Iowa decisions to assist it in arriving at a proper interpretation of this state statute.

### 3.   Does Iowa Code § 20.7(3) negate the presumption of at-will employment?

The question fairly posed by Lockhart's complaint and the School District's motion to dismiss is whether Iowa Code § 20.7(3) negates the presumption of at-will employment for public employees covered by the Iowa Public Employment Relations Act. No decisions of Iowa state courts directly address this question.  Although there is no conflict or inconsistency in governing authority, compelling arguments on both sides of this question of first impression can be drawn from decisions of the Iowa Supreme Court on related matters.  Some of those arguments are detailed here.

### a.   Section 20.7(3) negates the presumption

The most persuasive arguments for finding that § 20.7(3) overcomes the presumption that public employment is at will is found in the decisions of Iowa courts interpreting similar "cause" language as a limitation upon the employer's ability to discharge employees. The Iowa Supreme Court has repeatedly interpreted language quite similar to "proper cause" as constituting a limit upon an employer's ability to terminate an employee at any time for any reason and negating the presumption of an at-will employment relationship. *See, e.g., Anderson,* 540 N.W.2d at 283 ("only for cause or under certain condi-

tions" negated the presumption of at-will employment, citing *French,* 495 N.W.2d at 770; *Hunter,* 481 N.W.2d at 513; *and Fogel,* 446 N.W.2d at 455); *McBride,* 444 N.W.2d at 90 (employee was at will absent binding "for cause" language); *Cannon v. National By-Prods., Inc.,* 422 N.W.2d 638, 639 (Iowa 1988) ("just and sufficient cause" language was enforceable, negating a presumption of at-will employment). To interpret the phrase "discharge public employees for proper cause" in the same manner as Iowa courts have interpreted the phrases "discharge for cause" or "discharge for just cause" is certainly reasonable. Indeed, in *Norton v. Adair County,* 441 N.W.2d 347 (Iowa 1989), the Iowa Supreme Court appeared to embrace such interpretation.

In *Norton,* the plaintiff held a clerical position for the sheriff's department before she was discharged. *Norton,* 441 N.W.2d at 350. The district court interpreted Iowa Code § 331.652(7), which empowered county sheriffs "to appoint and remove deputies, assistants, and clerks" subject to certain provisions regarding deputy sheriffs, to allow the sheriff to "terminate the plaintiff's employment for any reason." *Id.* at 361. The plaintiff did not "appear to dispute the 'at will' nature of her employment," but instead contended that "the collective bargaining agreement altered that nature by requiring a 'proper cause' for her termination." *Id.* The collective bargaining agreement language in question was as follows:

> Except to the extent expressly abridged by a specific provision of the [collective bargaining agreement], [the county] shall have, *in addition to all powers, duties, and rights established by constitutional provision, statute, ordinance, charter, or special act, the exclusive power, duty, and the right to:* ... *discharge employees for proper cause.*

*Id.* at 362 (emphasis in the original). As noted by the court, the italicized language tracks essentially verbatim the language found in § 20.7(3) *Id.* The court held as follows:

> We think the italicized language simply means that a public employer retains the power to terminate the employment of a

public employee without proper cause when some provision, such as § 331.652(7), allows it do so. *See City of Fort Dodge v. PERB,* 275 N.W.2d 393, 397–98 (Iowa 1979) (§ 20.7 reserves broad rights to employers); *see also* Pope, ANALYSIS OF THE IOWA PUBLIC EMPLOYMENT RELATIONS ACT, 24 Drake L.Rev. 1, 9–11 (1974) (§ 20.7 confirms all the statutory and constitutional powers previously given to the public employer). Iowa Code § 331.652(7) had been part of Iowa law long before the Iowa Public Employment Relations Act was passed. County sheriffs thus retained the power to terminate assistants, clerks, and deputies without civil service status without cause after the Act was passed. [The language of the collective bargaining agreement] tracking the language of § 20.7 as it does, clearly recognizes this power.

> Any notion that a provision in a collective bargaining agreement [such as quoted above] may override a statutory grant of power like § 331.652(7) is clearly dispelled by Iowa Code § 20.28. Section 20.28 provides that

> > [a provision of the Code which is inconsistent with any term or condition of a collective bargaining agreement ... shall supersede the term or condition of the collective bargaining agreement ...]

*Id.* at 362.

The conclusion most readily draw from *Norton* and the above cases is that the language in § 20.7(3), which provides public employers with the power to "discharge public employees for proper cause," does elevate all public employees, unless otherwise excepted by statute, from an at-will employment status to a more permanent status. This conclusion, however, is far from clear. Compelling arguments also exist to support the conclusion that the language of § 20.7(3) does *not* negate the presumption of at-will employment, and thus the statute should be interpreted differently from other language introducing a "cause" requirement for termination.

### b. Section 20.7(3) retains the presumption

Other decisions of the Iowa Supreme Court, although again not specifically addressing the question raised here, support the argument that Iowa Code § 20.7(3) retains the presumption of at-will employment for Iowa public employees. One such decision, *Waterloo Educ. Ass'n v. Waterloo Community Sch. Dist.*, 372 N.W.2d 267 (Iowa 1985), supports the conclusion that a substantive distinction exists between the phrases "just cause" and "proper cause." In *Waterloo Educ. Ass'n*, the issue was an arbitration clause in a collective bargaining contract between a teachers' association and a school district. *Waterloo Educ. Ass'n*, 372 N.W.2d at 268. The court found that two statutory provisions regarding termination of a teacher's employment, Iowa Code §§ 279.27 and 279.15(2), both required "just cause," albeit in different circumstances. *Id.* Iowa Code § 279.27 addressed termination of a teacher at any time "for just cause," and the court found that this sort of termination, which was personal to the teacher, was not a mandatory subject of collective bargaining under Iowa Code § 20.9. *Id.* However, the court held that termination of a teacher under Iowa Code § 279.15(2), which addressed termination of a teacher at the close of a school year, was subject to the collective bargaining agreement and its arbitration clause. *Id.* at 268–69. The court noted *sua sponte*, however, that the collective bargaining agreement itself required "good and proper cause," which was different from the "just cause" required by the applicable statutory provision, Iowa Code § 279.15(2). *Id.* at 269. The court further indicated that the language of the agreement, which referred to "proper cause," might not have any effect in the face of Iowa Code § 20.28, which precludes any provision of a collective bargaining agreement that was inconsistent with the Code, while the "good cause" language of § 279.15(2) was read into the agreement as a matter of law. *Id.* at 269 ("'the law now writes sections 279.13 to 279.19 of the Code into teachers' contracts,'" quoting *Bruton v. Ames Community Sch. Dist.*, 291 N.W.2d 351, 356 (Iowa 1980)). The court did not resolve the issue, but stated the following:

The parties have not argued *the effect of the disparate language in [the collective bargaining agreement] and section 279.15(2),* and we do not address the issue. The point will likely arise in the arbitration proceedings and require resolution there. *This issue relates to the substantive grounds for termination* rather than the procedural question of section 279.15 proceedings vis-a-vis arbitration.

*Id.* at 269 (emphasis added). It is this language in *Waterloo Educ. Ass'n* that gives rise to one argument that "proper cause" and "just cause" can properly be interpreted has having different substantive meanings.

Another strong argument that the language "proper cause," as contained in § 20.7(3), does have a different substantive effect from "just cause," and does not in fact change the at-will status of public employees to a status requiring that discharge may only occur for "just cause," may be drawn from other decisions of Iowa courts. By its terms, § 20.7(3) is applicable to all public employees except those specifically excluded by § 20.4 and, according to *Norton*, those public employees covered by § 331.652(7). Yet the case law reveals that the presumption that public employment in Iowa is at will, unless that presumption is otherwise negated by some other statute or contract, has remained unchallenged for over two decades since § 20.7(4) was enacted in 1974. *See, e.g., Yockey v. State of Iowa*, 540 N.W.2d 418, 422 (Iowa 1995) (a state Department of Transportation employee was at will as was stated in the letter of acceptance and DOT handbook); *Borschel v. City of Perry*, 512 N.W.2d 565 (Iowa 1994) (in a case involving a discharge of a police officer whose employment agreement was oral and for an unspecified term, the employee admitted that he was an at-will employee and that his wrongful discharge claim was therefore based on a public policy exception); *McBride v. City of Sioux City*, 444 N.W.2d 85 (Iowa 1989) (a city assistant manager was not a civil employee and city employment manuals did not limit his discharge to discharge "for cause"); *Anderson v. Low Rent Hous. Comm'n*, 304 N.W.2d 239, 243 (Iowa), *cert. denied*, 454 U.S. 1086, 102 S.Ct. 645, 70 L.Ed.2d 621

(1981) ("It was agreed below that [the former secretary for a city commission] was an employee at will and had no statutory or contractual rights to due process"). All of the employees in these cases would be subject to the broad reach of § 20.7(3), See Iowa Code § 20.4 and § 331.652(7). Given that the statute's reach includes a vast number of public employees in the state of Iowa, yet Iowa courts have unquestioningly found the "at-will" doctrine was applicable to such public employees, this court has great hesitation to reach a contrary conclusion.

### c. *Statutory interpretation*

Yet another persuasive argument militating against the conclusion that Iowa Code § 20.7(3) was intended to eliminate the presumption of at-will employment for the majority of public employees is the placement of that statutory provision within the structure of the Iowa Public Employment Relations Act. A statute that was intended to change a public employer's ability to discharge an employee at any time and for virtually any reason, which existed under Iowa common law, by imposing upon a public employer a requirement that the discharge of a public employee may only be "for cause" places a clear restriction upon the powers of a public employer. The court recognizes that such a change would benefit the public employee, in the form of much greater job security, but the logical placement for a statute implementing such a dramatic change would be in § 20.8, which is entitled "Public Employee Rights." Section § 20.8 only addresses the issues of joining or assisting an employee organization, collective bargaining activities, or refusing to participate in employee organizations. Instead of appearing in the employee rights section, the provision in question, § 20.7(3), appears in the section articulating "Public Employer Rights." Placing a provision that restricts an employer's ability to discharge employees in a section dealing with "exclusive power, duty, and right" of a public employer seems incongruent. For a better understanding of this seeming incongruity, if the statute was indeed intended to change public employment from at-will employment to employment requiring cause for dismissal, and to ascertain the most plausible interpre-

tation of the provision, this court turns to consideration of the Act as a whole.

"In interpreting statutes, including public employment statutes, the dominant general purpose should be ascertained and, wherever possible, the various provisions construed so as to accomplish the intended goal." *Lee v. Halford*, 540 N.W.2d 426, 429 (Iowa 1995) (citing *Iowa Fed'n of Labor v. Iowa Dept. of Serv.*, 427 N.W.2d 443, 445 (Iowa 1988)); *Havill v. Iowa Dept. of Job Serv.*, 423 N.W.2d 184, 186 (Iowa 1988) (interpreting Iowa Code Ch. 19A regarding the Iowa merit system). The nature of the Iowa Public Employment Relations Act is evident in its opening provision:

> The general assembly declares that it is the public policy of the state to promote harmonious and cooperative relationships between government and its employees by permitting public employees to organize and bargain collectively; to protect the citizens of this state by assuring effective and orderly operations of government in providing for their health, safety, and welfare; to prohibit and prevent all strikes by public employees; and to protect the rights of public employees to join or refuse to join, and to participate in or refuse to participate in, employee organizations.

Iowa Code § 20.1 (omitting second paragraph dealing with the establishment of the public employment relations board or "PERB"). The focus of the Act upon collective bargaining has been noted by the Supreme Court of Iowa: "Chapter 20 of the Iowa Code provides the statutory framework governing the rights of public employees to organize and collectively bargain as well as the rights of the public employers with respect to the collective bargain process." *State v. PERB*, 508 N.W.2d 668, 671 (Iowa 1993). This purpose of the Iowa Public Employment Relations Act does not support the sweeping conclusion that the legislature intended to end the presumption that public employment in Iowa is at will unless specifically excepted from the Act in § 20.4.

In *State v. PERB*, the Iowa Supreme Court also has addressed § 20.7 in the context of collective bargaining agreements, particularly with relation to § 20.9. *Id.* The court

found that in § 20.9, the legislature created two categories of negotiable subjects in collective bargaining agreements: mandatory subjects and permissive subjects upon which the parties "mutually agreed." *Id.* The mandatory subjects of negotiation were set forth in the statute as a "laundry list." *Id.* The court noted that the mandatory subjects are specifically identified and limited in the Iowa act, unlike the National Labor Relations Act (NLRA), which includes language such as "and other terms and conditions of employment" and "other conditions of employment." *City of Fort Dodge v. PERB,* 275 N.W.2d 393, 395 (Iowa 1979). "Section 20.7, in contrast, grants certain 'powers, duties, and rights' exclusively to public employers." *State v. PERB,* 508 N.W.2d at 671. The court noted that the provision pertaining to "employers' rights" in the Iowa Act, the section in question here, § 20.7, has no counterpart in the NLRA. *City of Fort Dodge,* 275 N.W.2d at 395. Furthermore,

> [Section 20.7] contains an extremely broad list of employer rights. Nearly all legitimate functions of a public employer are covered. Section [20.9] should be properly viewed as providing exceptions to section [20.7].

Pope, ANALYSIS OF THE IOWA PUBLIC EMPLOYMENT RELATIONS ACT, 24 Drake L.Rev. 1, 34 (1974); *see also Charles City Educ. Ass'n v. PERB,* 291 N.W.2d 663, 667–68 (Iowa 1980) (quoting this portion from Pope favorably); *City of Fort Dodge,* 275 N.W.2d at 397–98 (same).

Whether a subject is negotiable under § 20.9 or is reserved as a right and power to the employer pursuant to § 20.7 has been the focus of litigation. *State v. PERB,* 508 N.W.2d at 673 (citing *Charles City Educ. Ass'n,* 291 N.W.2d at 663; *Charles City Community Sch. Dist. v. PERB,* 275 N.W.2d 766 (Iowa 1979); and *Clinton Police Dep't Bargaining Unit v. PERB,* 397 N.W.2d 764 (Iowa 1986)). Interpreting § 20.7, in the context of the general purpose of the Iowa Public Relations Act and the structure of the provisions within the Act, does help to clarify the proper interpretation of the statute. *Accord Lee,* 540 N.W.2d at 429. Indeed, the Supreme Court of Iowa has stated, "[s]pecifi-

cally, § 20.7 outlines the rights of public employers *in the collective bargaining process." State v. PERB,* 508 N.W.2d at 671 (emphasis added); *see also Gere v. Council Bluffs Community Sch. Dist.,* 334 N.W.2d 307, 310 (Iowa 1983) (public employers "are thus given [under § 20.7] broad powers in dealing with their staffs in order to achieve efficient governmental operations.").

If § 20.7 is properly construed as the reservation of employer rights in the collective bargaining process, *see State v. PERB,* 508 N.W.2d at 671 & 673, then what is the proper interpretation of the right to "discharge public employees *for proper cause"* in § 20.7(3)? Because public employment was at will and removal was not limited to "cause" at common law, *Van Baale,* 550 N.W.2d at 156, interpreting § 20.7(3) as limiting the ability of the employers to discharging employees only for cause seems inconsistent with the Iowa case law characterizing § 20.7 as reserving broad rights of employers in the context of collective bargaining.

#### d. A plausible interpretation

In this court's view, a more plausible interpretation, one consistent with the purpose of reservation of employer rights in the context of collective bargaining, is that the employer may discharge an employee for any reason and at any time, provided the reason is not improper under another existing law. Other existing law limiting grounds for discharge would include § 279.15, § 279.27, and § 400.18. It would also include limitations such as those found in the Iowa Civil Rights Act, which prohibits discriminatory discharges, Iowa Code Ch. 216, and Iowa common law, which precludes retaliatory discharges of at-will employees in violation of public policy. *See, e.g., Yockey v. State,* 540 N.W.2d 418 (Iowa 1995); *Borschel v. City of Perry,* 512 N.W.2d at 567; *Lara v. Thomas,* 512 N.W.2d 777, 780 (Iowa 1994); *Wilcox v. Hy–Vee Food Stores, Inc.,* 458 N.W.2d 870, 872 (Iowa App.1990). Yet another example of existing law limiting discharge of public employees to discharge for cause is the recognition by Iowa courts that a public employer may contract to limit its ability to discharge employees only for cause by agreement or binding handbook. *See McBride,* 444

N.W.2d at 90 (handbook for city personnel did not have language limiting discharge to "for cause"). The interpretation of the Act as a whole strongly supports the interpretation that "proper cause" as found in § 20.7(3) simply reserves the right of public employers to discharge employees "at will" in the collective bargaining process unless otherwise impermissible or improper to do so.

This interpretation of the "proper cause" language in § 20.7(3) is not inconsistent with the ultimate holding in *Norton*, which was that the "proper cause" language in the collective bargaining agreement did not alter the "at-will" status of the employees subject to § 331.652(7). Furthermore, any suggestion in *Norton* that public employees subject to § 20.7(3) and not subject to § 331.652(7) can only be discharged for cause is not necessary to the holding of the case, and could therefore be disregarded as dicta that is inconsistent with the meaning of § 20.7(3) when interpreted in the context of the Act as a whole. Under the interpretation suggested here, § 20.7(3) merely reserves the existing right of the public employer to discharge employees at will, including those subject to § 331.652(7), even in the context of a collective bargaining situation, unless the discharge is otherwise improper under the law.

### F. Certification Of The Question To The Iowa Supreme Court

■■■ However plausible this court may find the interpretation proffered here, the court can only conclude that the correct interpretation of the "proper cause" language found in § 20.7(3) is unclear in light of conflicting inferences that can reasonably be drawn from decisions of the Iowa Supreme Court on related issues. The *Norton* decision and other decisions interpreting "for cause" and "just cause" as negating the presumption of at-will employment seem to point to a conclusion that all public employees reached by § 20.7(3), unless otherwise excepted, are no longer at-will employees. On the other hand, the Iowa Supreme Court's suggestion in *Waterloo Education Ass'n* that

a substantive difference exists between "proper cause" and "just cause," other decisions since enactment of § 20.7(3) that do not question the continued existence of the presumption that public employees are "at-will" employees, and the interpretation of § 20.7(3) in the context of the structure and purpose of the Iowa Public Employment Relations Act as a whole, all suggest that the "proper cause" language of the statute means that a public employer retains the right to discharge an employee at will, unless to do so would be otherwise improper.

The interpretation of § 20.7(3) affects a vast number of public employees in the state of Iowa, as well as the behavior of the state of Iowa itself and other public entities as employers. Because the interpretation of the statute may have a very broad impact, and because forceful arguments support two contrary conclusions under Iowa law, this court will consider *sua sponte* whether its proper course is to certify the question of the proper interpretation of the statute to the Iowa Supreme Court.[4]

### 1. Authorization for certification

Whether a federal district court should certify a question of state law to the state's highest court is a matter "committed to the discretion of the district court." *Allstate Ins. Co. v. Steele*, 74 F.3d 878, 881–82 (8th Cir. 1996) (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974)); *Packett v. Stenberg*, 969 F.2d 721, 726 (8th Cir.1992) (also citing *Lehman Bros.*). Local Rule 23 of the United States District Court for the Northern District of Iowa provides as follows:

> When there is involved in any proceeding a question of law of a state which may be determinative of the cause then pending in this court and as to which it appears there is no controlling precedent in the decisions of the appellate courts of the state, a motion may be made to certify the question of law to the highest appellate court of the

---

4. Neither party has requested that the court certify this question to the Iowa Supreme Court. Nonetheless, the local rule authorizing certification, which is set out in the body of this opinion,

specifically states that the court may certify a question on the motion of a party "or on its own motion." N.D. Ia. LR 23.

state, this court, on such motion or on its own motion, may certify such question to the appropriate court, if authorized by state or rule.

N.D. Ia. LR 23. Certification is also authorized by a statute of the state of Iowa. The provision providing authorization states the following:

The supreme court may answer questions of law certified to it by the supreme court of the United States, a court of appeals of the United States, a United States district court or the highest appellate court or the intermediate court of another state, when requested by the certifying court, if there are involved in a proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the appellate courts of this state.

Iowa Code § 684A.1 (1996).

A court may also consider the following factors in determining whether to certify a question to the state supreme court: (1) the extent to which the legal issue under consideration has been left unsettled by the state courts; (2) the availability of legal resources which would aid the court in coming to a conclusion on the legal issue; (3) the court's familiarity with the pertinent state law; (4) the time demands on the court's docket and the docket of the state supreme court; (5) the frequency that the legal issue in question is likely to recur; and (6) the age of the current litigation and the possible prejudice to the litigants which may result from certification. *Olympus Alum. Prod. v. Kehm Enters., Ltd.,* 930 F.Supp. 1295, 1309 n. 10 (N.D.Iowa 1996) (citing *Rowson v. Kawasaki Heavy Indus., Ltd.,* 866 F.Supp. 1221, 1225 & n. 5 (N.D.Iowa 1994), in turn citing *L. Cohen & Co. v. Dun & Bradstreet, Inc.,* 629 F.Supp. 1419, 1423–24 (D.Conn.1986)). The court will refer to these factors here as the *"Cohen* factors."

### 2. Certification analysis

The local rule of this district and the state authorizing statute regarding certification both address whether the issue is determina-tive of the pending cause. As discussed in section III.E.1. of this opinion, *supra,* the issue of whether § 20.7(3) negates the presumption of at-will employment for all state employees is crucial to the resolution of all three claims remaining in this case. If the statute does not negate the presumption of at-will employment, then Lockhart has no property interest. Without a property interest, he has no valid due process claim as alleged in count one. As the due process claim is Lockhart's only remaining federal question, dismissal of that claim would call into question this court's jurisdiction over the pendent state-law claims. Even if the court determined that it could still properly reach Lockhart's state-law causes of action, they too depend upon the interpretation of § 20.7(3). *See* III.E.1, *supra.* This court finds the interpretation of § 20.7(3) is determinative of all of Lockhart's remaining claims.

The local rule, the state certification statute, and the first of the *Cohen* factors all address an apparent absence of controlling precedent. No precedent exists directly controlling the issue of whether § 20.7(3) negates the presumption of at-will employment of public employees not otherwise excepted by § 20.4 or § 331.652(7). Thus, the question proposed for certification here does not depend upon a conflict or apparent conflict in governing law. Rather, compelling arguments on both sides of the argument can be drawn from decisions of the Iowa Supreme Court on related matters. *See* III.E.3., *supra.* Based strictly upon *Norton* and cases interpreting "for cause" and "just cause," § 20.7(3) could be construed to eliminate at-will employment for a vast number of public employees in the state of Iowa. On the other hand, *Waterloo Educ. Ass'n,* decisions applying the at-will doctrine without question to public employees seemingly subject to § 20.7(3), and the structure and purpose of the statute all militate against any finding of any intent by the legislature to sweep away the presumption of at-will employment for the entirety of the state governmental workforce. In the absence of controlling authority, certification of this state-law question to the Iowa Supreme Court is appropriate.

The second *Cohen* factor, regarding the availability of legal resources that would aid the court in coming to a conclusion on the legal issue, and the third *Cohen* factor, regarding the court's familiarity with pertinent state law, point, although less certainly, toward certification. Although the court has much the same resources available to it as the Iowa Supreme Court, and much the same familiarity with Iowa employment law issues, the issue this court is considering certifying involves interpretation of Iowa cases and an Iowa statute. The court that rendered those decisions and the court that is charged, in the first instance, with interpreting Iowa statutes, should, wherever possible, answer such a question of first impression. Furthermore, the issue proposed for certification is a fundamental one in Iowa employment law. It is certainly more appropriate to provide the Iowa Supreme Court with the opportunity to render the first decision on this important question of first impression, than for this federal district court to attempt to ascertain what the Iowa Supreme Court would hold if that court were presented with the question.

The fourth *Cohen* factor addresses the relative docket load of the courts. This court recognizes that the Supreme Court of Iowa has a heavy docket. Thus, this court does not lightly suggest that the Iowa Supreme Court respond to a certified question. However, this court is of the opinion that the potential impact of this important state legal issue upon a significant percentage of the state government workforce in and of itself should warrant the attention and extra time of the Iowa Supreme Court.

The fifth *Cohen* factor addresses the frequency with which the legal issue in question is likely to occur. As the state and its various branches employ a vast number of employees that are subject to § 20.7(3), this issue has a very high likelihood of recurrence. Every time the state discharges an employee under the presumption that the employment relationship is at will, it could be subject to litigation raising this very same issue regarding § 20.7(3).

Finally, the sixth factor listed in *Cohen* also favors certification. That factor raises concern for the age of the current litigation and the possible prejudice to the litigants which may result from certification. *Olympus,* 930 F.Supp. at 1309 n. 10 (citing *L. Cohen & Co.,* 629 F.Supp. at 1424). In this case, the School District has not yet filed an answer to Lockhart's complaint. No prejudice would result to either party in this preliminary stage of the case by seeking an answer from the Iowa Supreme Court to the important question framed for certification. Instead, response to the certified question would clarify and facilitate the resolution of this issue.

As all considerations favor certification, this court will certify the following question to the Supreme Court of Iowa:

Does Iowa Code § 20.7(3) negate the presumption of at-will employment for all public employees covered under this provision of the Iowa Public Employment Relations Act?

Resolution of the above question is essential to any further proceeding on the remaining claims in this case. Therefore, this court will reserve ruling on the pending motion to dismiss until a response regarding the certified question is received from the Supreme Court of Iowa.

## IV.  CONCLUSION

The court concludes that the School District's motion to dismiss must be **granted in part** and **denied in part**, and that ruling on the motion must be **reserved in part**. Lockhart has properly amended his complaint to allege constitutional violations of the equal protection and due process clauses. Thus, resolution of the question of whether this court has jurisdiction over this case must be based on the amended complaint. The court finds that the recast federal claims are federal questions upon which federal jurisdiction can be based. Thus, that portion of the School District's motion to dismiss for lack of subject matter jurisdiction, pursuant to *Fed. R.Civ.P.* 12(b)(1), is **denied.**

However, the court finds that the School District is entitled to dismissal cum summary judgment, pursuant to *Fed.R.Civ.P.* 12(b)(6) and 56, on Lockhart's equal protection claim. As pleaded, Lockhart's equal protection claim fails to state a claim upon which relief

can be granted and Lockhart has failed to generate any genuine issue of material fact that the School District acted with the requisite discriminatory intent to support such a claim. Thus, summary judgment in favor of the School District is granted as to Lockhart's equal protection claim and that claim is **dismissed.**

Ruling is **reserved** on the portions of the School District's motion seeking to dismiss Lockhart's federal due process claim and state-law wrongful discharge claims. After a careful review of the conflicting Iowa law regarding the interpretation of Iowa Code § 20.7(3) and its impact upon the employment status of the public employees covered by that statute, the court concludes that the question of the proper interpretation of the statute is best placed in the hands of the Iowa Supreme Court. Having considered the authorizations to do so under this court's local rules and an Iowa authorizing statute, various factors pertinent to the propriety of certification, and the far-reaching implications of the resolution of this issue upon the governmental workforce in the state, this court has decided to certify the following question to the Supreme Court of Iowa:

> Does Iowa Code § 20.7(3) negate the presumption of at-will employment for all public employees covered under this provision of the Iowa Public Employment Relations Act?

A determination of this question will hopefully resolve an essential issue common to the remaining claims in this case.

**IT IS SO ORDERED.**