Jean BERG, Plaintiff,

v.

LIBERTY MUTUAL INSURANCE
COMPANY, Defendant.

No. C03–4004–PAZ.

United States District Court,
N.D. Iowa,
Western Division.

June 3, 2004.

Scott L. Bixenman, Murphy, Collins & Bixenman, PLC, W.E. (Gene) Collins, LeMars, IA, for Plaintiff.

Donna Renae Miller, John Werner, Grefe & Sidney, Des Moines, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ZOSS, United States Magistrate Judge.

On January 28, 2004, the defendant Liberty Mutual Insurance Company ("Liberty") filed a motion for summary judgment, a statement of material facts, a supporting brief, and an appendix. (Doc. No. 14) On March 29, 2004, the plaintiff Jean Berg ("Mrs. Berg") filed a resistance to the motion (Doc. No. 17–1), a response to the defendant's statement of material facts (Doc. No. 17–2), a statement of additional material facts (Doc. No. 17–3), a brief in support of the resistance (Doc. No. 17–4), and an appendix (Doc. No. 21). On April 8, 2004, Liberty filed a reply brief, a response to plaintiff's statement of additional material facts, and a supplemental appendix. (Doc No. 24)

The court has considered the parties' submissions and arguments carefully, and turns now to discussion of the issues raised by Liberty in its motion.

## I. INTRODUCTION

Mrs. Berg is the widow of Leonard Berg (Mr. Berg), who was killed in a motor vehicle accident in Ida County, Iowa, on February 6, 2003 ("the accident"). At the time of the accident, Mr. Berg was driving a semi tractor northbound on U.S. Highway 59. The semi tractor belonged to Mr. Berg's employer, K & B Transportation, Inc ("K & B"), an Iowa corporation. A vehicle traveling southbound on U.S. Highway 59 crossed the center line and struck the semi tractor, killing Mr. Berg. The insurance company for the owner of the other vehicle paid Mrs. Berg its policy limits of $20,000.

Mrs. Berg filed this diversity of citizenship action on January 16, 2003, claiming Liberty is liable to her pursuant to an underinsured motorist ("UIM") coverage provision in a liability insurance policy issued by Liberty to K & B. Alternatively, she claims Liberty was required to provide UIM coverage pursuant to the provisions of section 44–6408 of the Revised Statutes of Nebraska.[1] (See Complaint, Doc. No. 1)

Liberty denies Mrs. Berg's claims. (See Answer, Doc. No. 3)

## II. UNDISPUTED FACTS

K & B is a transportation company incorporated in Iowa, with its principal place of business in Nebraska. The parties dispute the nature of K & B's presence in Iowa. The plaintiff points out that K & B has no facility or office in Iowa, and K & B's telephone number in Iowa connects to a cellular telephone in Denison. Liberty points out that at the time of the accident, K & B continuously parked at least six trucks in a designated area of the parking lot at the IBP plant in Denison, Iowa, where the trucks were available to haul IBP trailers. K & B drivers would report to the IBP plant, pick up trucks to haul loads, leave their personal vehicles at the lot while hauling the loads, and then return the trucks to the lot and pick up their personal vehicles after the loads had been delivered. Liberty argues that, as a result, K & B had "a place of business in Iowa." The plaintiff responds that K & B's dispatch office, truck shop, wash base, and tire shop all are in a facility in South Sioux City, Nebraska, and routine maintenance and repairs for K & B's entire fleet of trucks are performed at the Nebraska facility.[2] Also, K & B has selected Nebraska

1. The Nebraska statute provides:
   (1) No policy insuring against liability imposed by law for bodily injury, sickness, disease, or death suffered by a natural person arising out of the ownership, operation, maintenance, or use of a motor vehicle within the United States, its territories or possessions, or Canada shall be delivered, issued for delivery, or renewed with respect to any motor vehicle principally garaged in this state unless coverage is provided for the protection of persons insured who are legally entitled to recover compensatory damages for bodily injury, sickness, disease, or death from (a) the owner or operator of an uninsured motor vehicle in limits of twenty-five thousand dollars because of bodily injury, sickness, disease, or death of one person in any one accident and, subject to such limit for one person, fifty thousand dollars because of bodily injury, sickness, disease, or death of two or more persons in any one accident, and (b) the owner or operator of an underinsured motor vehicle in limits of twenty-five thousand dollars because of bodily injury, sickness, disease, or death of one person in any one accident and, subject to such limit for one person, fifty thousand dollars because of bodily injury, sickness, disease, or death of two or more persons in any one accident."
   NEB. REV. STAT. § 44–6408.

2. However, truck breakdowns are handled at various shops throughout the states where K & B operates. Also, warranty work is han-

as the host state for purposes of licensing and registering all of its vehicles under the International Registration Plan ("IRP"), and its trucks therefore display Nebraska license plates.

Liberty provided liability insurance to K & B beginning in 1997. Liberty renewed coverage annually at least through November 1, 2002. On November 26, 2001, Liberty renewed coverage for the period November 1, 2001, to November 1, 2002. The new policy insured the approximately 300 trucks in K & B's fleet. The total estimated premiums for the new policy were $824,400. The policy included an endorsement providing $1 million in UIM coverage for vehicles "licensed or principally garaged in ... Nebraska." In a separate document, K & B rejected UIM coverage for vehicles registered or principally garaged in Iowa.[3] Both the notice of UIM coverage form and the Iowa declination of UIM coverage form were signed on November 28, 2001, by a representative of K & B.

On February 5, 2001, Mr. Berg was hired by K & B to drive trucks carrying meat from the Denison, Iowa, IBP plant to various meat processing plants in the Midwest. After each delivery, he was to return with the truck to the IBP plant in Denison. On February 6, 2001, Mr. Berg's second day on the job, he was killed in a motor vehicle accident while driving a K & B truck.

The truck Mr. Berg was driving at the time of the accident was titled, licensed, and registered in Nebraska. From August 18, 2001, to September 15, 2001, the truck was parked at the IBP lot in Denison, Iowa; from September 17, 2001, through November 12, 2001, it was parked in Nebraska; from November 14, 2001, to December 22, 2001, it was parked in Illinois; and from December 26, 2001, until the accident on February 6, 2002, it again was parked at the IBP lot in Denison, Iowa. Thus, it was parked in Nebraska on the date of the policy's inception (November 1, 2001); in Illinois on the date the policy was issued (November 26, 2001); and in Iowa on the date of the accident (February 6, 2002).

## III. STANDARDS FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment and provides that either party to a lawsuit may move for summary judgment without the need for supporting affidavits. See Fed.R.Civ.P. 56(a), (b). Rule 56 further states that summary judgment:

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). "A court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party, ... and give [the nonmoving party] the benefit of all reasonable inferences that can be drawn from the facts." *Lockhart v. Cedar Rapids Comm. Sch. Dist.,* 963 F.Supp. 805, 814 (N.D.Iowa 1997) (citing *Matsushita Elec. Indus. Co.*

---

dled by dealers in various locations. For example, the warranty work on the truck involved in the accident was performed in Sioux City, Iowa.

**3.** "Iowa legislation requires us to afford Uninsured and Underinsured Motorists Insurance

in your policy for Bodily Injury Liability unless you reject it in writing. This requirement affects all types of motor vehicles registered or principally garaged in Iowa whether private[,] passenger[,] or commercial." (Doc. No. 14–4, page bearing Bates-stamped number 010008)

*v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

The party seeking summary judgment must " 'inform[ ] the district court of the basis for [the] motion and identify[ ] those portions of the record which show lack of a genuine issue.' " *Lockhart*, 963 F.Supp. at 814 (quoting *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir.1992)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact is one with a real basis in the record. *Lockhart*, 963 F.Supp. at 814 n. 3 (citing *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. 1348). Once the moving party meets its initial burden under Rule 56 of showing there is no genuine issue of material fact, the nonmoving party, "by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Lockhart*, 963 F.Supp. at 814 (citing *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348). "Mere allegations not supported with specific facts are insufficient to establish a material issue of fact and will not withstand a summary judgment motion.. Only admissible evidence may be used to defeat such a motion, and affidavits must be based on personal knowledge." *Henthorn v. Capitol Communications*, 359 F.3d 1021, 1026 (8th Cir.2004) (internal citations omitted).

Addressing the quantum of proof necessary to successfully oppose a motion for summary judgment, the United States Supreme Court has explained that the nonmoving party must produce sufficient evidence to permit " 'a reasonable jury [to] return a verdict for the nonmoving party.' " *Lockhart*, 963 F.Supp. at 815 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Furthermore, the Court has held the trial court must dispose of claims unsupported by fact and determine whether a genuine issue exists for trial, rather than "weigh the evidence and determine

the truth of the matter." *Lockhart*, 963 F.Supp. at 815 (citing *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505; *Celotex*, 477 U.S. at 323–24, 106 S.Ct. 2548; *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. 1348).

The Eighth Circuit recognizes that "summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions*, 900 F.2d 1234, 1238 (8th Cir.1990) (citing Fed.R.Civ.P. 56(c)). The Eighth Circuit, however, also follows the principle that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Id.* (quoting *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548). *See also Hartnagel v. Norman*, 953 F.2d at 396.

Thus, the trial court must assess whether a nonmovant's response would be sufficient to carry the burden of proof at trial. *Hartnagel*, 953 F.2d at 396 (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548). If the nonmoving party fails to make a sufficient showing of an essential element of a claim with respect to which it has the burden of proof, then the moving party is "entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Woodsmith Pub. Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir.1990). However, if the court can conclude that a reasonable jury could return a verdict for the nonmovant, then summary judgment should not be granted. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Burk v. Beene*, 948 F.2d 489, 492 (8th Cir.1991); *Woodsmith*, 904 F.2d at 1247.

Accordingly, if Liberty shows no genuine issue exists for trial, and if Mrs. Berg cannot advance sufficient evidence to refute that showing, then Liberty is entitled

to judgment as a matter of law, and the court must grant summary judgment in Liberty's favor. If, on the other hand, the court "can conclude that a reasonable trier of fact could return a verdict for [Mrs. Berg], then summary judgment should not be granted." *Lockhart,* 963 F.Supp. at 815 (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510)

Keeping these standards in mind, the court now will address the defendant's motion for summary judgment.

### IV. ANALYSIS

#### A. Underinsured Motorist Coverage Under the Policy

■ Liberty argues it is entitled to summary judgment on Mrs. Berg's claim that Liberty contracted with K & B to provide UIM coverage for the truck being driven by Mr. Berg at the time of the accident. Liberty denies it contracted to provide UIM coverage for the truck.

To resolve this argument, the court first looks to the language of the UIM endorsement to the policy. The endorsement provided UIM coverage for trucks "licensed *or* principally garaged in ... Nebraska." (*Emphasis added.*) Therefore, if the truck Mr. Berg was driving at the time of the accident was *either* licensed in Nebraska *or* principally garaged in Nebraska, then the truck was covered under the UIM endorsement to the policy.

The parties do not dispute that the truck displayed a Nebraska license plate at all material times. However, Liberty provides a detailed explanation of the International Registration Plan ("IRP"), and argues the truck was "registered," and therefore "licensed," in all states that are part of the IRP.

As explained by Liberty, the IRP is an agreement among various jurisdictions that only one license plate and cab card will to be issued to each truck in a fleet of trucks, and the license fees will be paid to each jurisdiction based on the miles traveled by the truck in the jurisdiction during the period of the license. According to Liberty, a truck is considered to be fully licensed and registered in all jurisdictions where the vehicle is operated. From this, Liberty argues "the term 'licensed' in the policy must be read in terms of the fleet of vehicles it was meant to insure—a fleet registered and licensed under the IRP. At the time of the accident, the truck was not licensed in Nebraska, and therefore was not covered by the Nebraska UIM policy terms." (Doc. No. 24–1, p. 2) Thus, Liberty appears to be arguing that because K & B's fleet was licensed under the IRP, it was not licensed in any specific state for purposes of the UIM endorsement. Liberty offers no legal support for this position.

The question presented to the court here is not whether a truck registered under the IRP is fully "licensed" or "registered" in each state in which it is operated, but whether, for purposes of interpreting an endorsement to an insurance policy, the truck was licensed in Nebraska. The UIM endorsement to the policy provided UIM coverage for K & B trucks licensed in Nebraska, so if the truck was licensed in Nebraska at the appropriate time, it was covered.

The question necessarily presented by Liberty's argument is where, if not Nebraska, the truck was licensed. Liberty's argument that the truck was licensed everywhere covered by the IRP does not help Liberty, because "everywhere" would include Nebraska, and would give effect to UIM coverage under the endorsement. An argument that K & B's trucks are not licensed anywhere would render meaningless the language of the endorsement that UIM coverage is provided to trucks licensed in Nebraska. Insurance contracts

should not be construed to render contract language meaningless.

The insurance contract was issued to K & B at its office in South Sioux City, Nebraska. Therefore, as the Eighth Circuit Court of Appeals has explained, the contract is interpreted pursuant to Nebraska law. *See Avemco Ins. Co. v. Auburn Flying Serv., Inc.,* 242 F.3d 819, 821 (2001) (citing *Langley v. Allstate Ins. Co.,* 995 F.2d 841, 844 (8th Cir.1993)). The *Avemco* court explained the well-established law of Nebraska as follows:

Nebraska law provides:

An insurance policy is to be construed as any other contract to give effect to the parties' intentions at the time the contract was made.... The resolution of an ambiguity in a policy of insurance turns not on what the insurer intended the language to mean, but what a reasonable person in the position of the insured would have understood it to mean at the time the contract was made.

*Malerbi v. Central Reserve Life,* 225 Neb. 543, 407 N.W.2d 157, 162–63 (1987) (internal citations omitted).

The parties to an insurance contract may contract for any lawful coverage, and an insurer may limit its liability and impose restrictions and conditions upon its obligation under the contract not inconsistent with public policy or statute.... Where the terms of [an insurance] contract are clear, they are to be accorded their plain and ordinary meaning. The language of an insurance policy should be read to avoid ambiguities, if possible, and the language should not be tortured to create them. When an insurance contract can fairly be interpreted in more than one way, there is ambiguity to be resolved by the court as a matter of law. An ambiguous insurance contract will be construed in favor of the

insured, but ambiguity will not be read into insuring language which is plain and unambiguous in order to construe it against the preparer of the contract. In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous.

*American Family Ins. Group v. Hemenway,* 254 Neb. 134, 575 N.W.2d 143, 148 (1998) (internal citations omitted).

*Avemco,* 242 F.3d at 821–22.

The court finds, as a matter of law, that the language in the Nebraska UIM endorsement is not ambiguous. The endorsement makes no reference to the IRP, nor does it limit coverage based on any interpretation of the IRP. Thus, the court holds that on the record presented, the truck in question was licensed in Nebraska at all material times. Based on the four corners of the document, the unambiguous language of the UIM endorsement clearly would provide coverage for the truck under any fair reading of the document.

The question of where, for purposes of interpreting the UIM endorsement, the truck in question was "principally garaged" at the time of the accident is a more difficult one, given the mobile nature of the covered property during the time period at issue here. However, because the endorsement is applicable if the truck was either licensed or principally garaged in Nebraska, and the court has found the truck was licensed in Nebraska at all material times, the court does not need to reach the issue of where the truck was principally garaged.

For these reasons, Liberty's motion for summary judgment is **denied** on this claim.

### B. Underinsured Motorist Coverage Under Nebraska Law

■ The plaintiff claims, in the alternative, that Nebraska law mandates UIM

coverage for the truck, and coverage should be imposed as a matter of law.[4] *See* Neb.Rev.Stat. § 44–6408. Although the court does not need to reach this claim in light of its ruling that the Nebraska UIM endorsement covers the truck in question, the court nevertheless will address this issue briefly.

Whether the Nebraska UIM statute applies or not is dependent upon the answers to two questions: (1) where was the truck "principally garaged" at the appropriate time; and (2) what is the appropriate date to use in answering this question—the effective date of the policy, the date the policy was issued, or the date of the accident?

 The second question is answered by the statute itself. Nebraska law provides that UIM coverage must be provided in all liability insurance policies issued for vehicles principally garaged in Nebraska at the time the policy is "delivered, issued for delivery, or renewed." The policy in this case was delivered and issued for delivery on or after November 26, 2001, but it appears the policy was renewed as of November 1, 2001.

As to the first question, under any definition of the phrase "principally garaged," the truck involved in this case was principally garaged in Nebraska on November 1, 2001. Accordingly, Liberty is required to provide the statutorily required UIM coverage for the truck, and the provisions of the Nebraska statute are deemed part of the policy. *See Modglin v. State Farm Mut. Auto. Ins. Co.,* 273 Cal.App.2d 693, 698–99, 78 Cal.Rptr. 355 (1969) (required statutory provisions are part of every insurance policy to which statute applies, to same extent as if statute were written out in full in the policy).

4. Arguably, if the plaintiff prevails on this argument, coverage would be at the statutory minimum amount provided under Nebraska law, $25,000. (*See* footnote 1, *supra* ) Be-

Therefore, Liberty's motion for summary judgment is **denied** on this claim.

## IV. CONCLUSION

Based upon the foregoing analysis, Liberty's motion for summary judgment (Doc. No. 14) is **denied**.

**IT IS SO ORDERED.**

cause Mrs. Berg recovered $20,000 from the driver of the other vehicle, the statutory coverage presumably would provide only an additional $5,000 of coverage.